## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF PUERTO RICO

IN RE:

RUDY  MARTINEZ ARZUAGA

ROSA  CALDERON MOLINA

Debtor(s)

RUDY  MARTINEZ ARZUAGA

ROSA  CALDERON MOLINA

Plaintiff

QUANTUM SERVICING CORP

Defendant(s)

CASE NO. 03-01215 BKT

CHAPTER 13

ADVERSARY NO. 10-00107 BKT

FILED & ENTERED ON 04/03/2012

### OPINION AND ORDER

On July 2, 2010, Plaintiffs, Rudy Martínez Arzuaga and Rosa Calderón Molina, initiated this adversary proceeding upon filing a complaint for alleged damages and violations of the discharge injunction pursuant to 11 U.S.C. § 524 of the Bankruptcy Code and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Dkt No. 1).  Defendant, Quantum Servicing, Inc. ("Quantum"), in its answer to the complaint presented as a defense that Quantum's collection efforts were for post-petition arrears accrued after the confirmation of the plan and after the discharge (Dkt No. 14).

The Court ordered bifurcation of the case into two stages, liability and damages, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7042 of the Federal Rules of Bankruptcy Procedure (Dkt No. 68).  A trial onthe liability issue was held on March 6, 2012.

### I.    Undisputed facts

The parties have proffered the following facts as undisputed and are binding as if adjudicated

by this Court:

1. Plaintiffs, Rudy Martínez Arzuaga and Rosa Calderón Molina, are married to each other.

2. Plaintiffs filed their Chapter 13 bankruptcy petition on February 10, 2003.

3. On June 23, 2003, creditor, Doral Financial Corporation, filed a secured claim in the amount of $45,350.00 for a loan itemizing pre-petition arrears of $27,466.31 encumbering Debtors' residence.

4. On or about May 25, 2005, Doral Financial Corporation filed a motion for relief from stay claiming that after the filing of the bankruptcy petition, Debtors' account accumulated postpetition arrears of $4,915.44, including late charges and legal fees.

5. On or about September 12, 2005, Doral Financial Corporation filed a notice of voluntary withdrawal of its motion for relief from stay asserting that the causes which had prompted the referenced filing had been cured by debtors.

6. On or about April 15, 2008, the Chapter 13 Trustee filed the Trustee's Notice of Plan Completion.

7. Debtors/Plaintiffs were discharged on May 28, 2008.

8. Quantum is a debt collector pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA"). 15 U.S.C. § 1692a(6).

9. Through a letter dated January 5, 2009, Quantum stated that Doral Financial Corporation had not forwarded all bankruptcy trustee payments to Quantum at the time of the transfer of Plaintiffs' account.

10. On or about December 15, 2009, Doral Bank sent two payments to Quantum in the amounts of $813.99 and $1,024.10 in payment of funds paid by Plaintiffs during their bankruptcy and retained by Doral.

11. Following Plaintiffs' discharge, Doral Financial Corporation transferred Plaintiffs' account to creditor Dovenmuehle Mortgage, Inc., who in turn assigned it to Quantum as mortgage servicer.

(Dkt No. 67, p. 6-7, Dkt No. 72, p. 2)

## II.  Findings of fact

After deliberation of testimony and the submission of documentary evidence from all parties, the following are the additional pertinent facts that were established:

12. Debtors were granted a discharge under Section 1328(a) of the Bankruptcy Code on May 28, 2008.

13. Plaintiffs cured all of the pre-petition mortgage arrears through their bankruptcy case.

14. Following Plaintiffs' discharge, Doral Financial Corporation transferred Plaintiffs' account to creditor Dovenmuehle Mortgage, Inc., who in turn assigned it to Quantum as mortgage servicer.

15. Quantum began servicing Plaintiffs' mortgage loan with Doral Bank on or around July 1, 2008. In June 2008, Plaintiffs were notified by Quantum that from July 1, 2008, all mortgage payments were to be directed to Quantum instead of Doral Bank.

16. Quantum made several collection efforts, including phone calls and letters, directed to Plaintiffs for collection of arrears. Telephone calls from Quantum would range between 3 to 4 times per month, for a period of 3 to 4 months.

17. On January 26, 2009, Quantum issued a collection letter to Plaintiffs requesting outstanding payments from June 1, 2008, and for payments due for the months thereafter until January 2009, for a total amount of $4,452.44. This was the first letter sent by Quantum to Plaintiffs claiming arrears.

18. Upon receipt of Quantum's collection letter of January 26, 2009, Plaintiffs contacted Quantum to inquire and clarify the information of the purported arrears. Quantum explained to Plaintiffs that the collection efforts were related to eight (8) months in arrears. Subsequently, Plaintiffs sent to Quantum copy of money orders as evidence of payment of the purported arrears.

19. After Plaintiffs provided evidence of the mortgage payments to Quantum, Quantum contacted Plaintiffs to inform that said evidence was incompatible with the payments requested. Plaintiffs sent additional evidence of payment, in the form of money orders, for the months asserted by Quantum.

20.     Plaintiffs received monthly statements of accounts from Quantum corresponding to the months of February to July 2009.

21.     Through a letter dated May 26, 2009, Plaintiffs requested that Quantum corroborate all payments previously made by Plaintiffs to Doral Bank.

22.     On November 21, 2009, Quantum sent out a letter to Plaintiffs requesting payment for seven (7) months of mortgage payments owed, for a total amount of $3,942.26. On December 4, 2009, Quantum sent another letter to Plaintiffs requesting payment for eight (8) months of mortgage payments owed, for a total amount of $4,481.94.

23.     On January 5, 2010, Quantum notified Plaintiffs, by letter, that their account was rectified since:(1) funds received from Doral Bank in the amount of $1,838.08 were applied to the Plaintiffs' account, (2) the amount of $3,140.10 that was held in an escrow account with Doral Bankwas also applied to Plaintiffs' account with Quantum,and the escrow requirement was eliminated. These actions brought Plaintiffs account to a current status.

24.     On or around February 2010 Quantum issued a check to the order of Plaintiffs.

## III. Legal Analysis and Discussion

### A.     Violation of the discharge injunction

A bankruptcy discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. 11 U.S.C. § 524(a)(2). A bankruptcy discharge only covers personal liability of the debtor. Johnson v. Home State Bank, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*-while leaving intact another-namely, an action against the debt *in rem*.").After the bankrupt has been discharged, a creditor cannot proceed against the debtor, personally, for debts incurred prior to the bankruptcy filing or discharge. 11 U.S.C. § 524(a). Section 524

permanently enjoins creditor actions to collect discharged debts and embodies the "fresh start" concept of the Bankruptcy Code. Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444-45 (1st Cir.2000); Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir.1996).

Although §524(a)(2) does not specifically authorize a remedy for its violation, a bankruptcy court is authorized to invoke 11 U.S.C. § 105 to enforce the discharge injunction imposed by 11 U.S.C. § 524 and order damages for the debtor. Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444-45 (1st Cir.2000); In re Duby, 451 B.R. 664, 670 (1st Cir.BAP. 2011). Nonetheless, Plaintiffs need to prove a violation of the discharge injunction.

The parties in this case do not contest that Quantum received actual notice of the discharge order. It is Quantum's position that all collection efforts were made post discharge, for post-petition arrears that were not discharged.

Based on the testimony received by the Court and the documentary evidence submitted by the parties, the Court finds that all of Quantum's collection actions followed the discharge order of May 28, 2008, and none of Quantum's collection actions occurred prior to that date. This conclusion has been conceded by Plaintiffs. Moreover, the amounts claimed by Quantum following the discharge order were for monthly payments owed by Plaintiffs for the period between June2008and January 2009, which is also post discharge order. Therefore, the Court finds that Quantum's actions did not violate the discharge injunction.

The instant cause of action was tried and submitted on the merits. Defendant successfully controverted Plaintiffs' evidence and testimony and proved that no violation of the discharge injunction occurred. Thus, the testimony and evidence established that Plaintiffs have no cause of action against Quantum. As a result, the Court finds that the dismissal of the discharge injunction cause of action is proper.

**B.      Violation of the FDCPA**

Plaintiff's second cause of action alleges a violation of the FDCPA by Quantum and seeks damages. The FDCPA is a consumer protection statute enacted to provide consumers a remedy after they have been subjected to abusive, deceptive and unfair debt collection practices. 15 U.S.C. §1692.  Plaintiffs base their cause of action under the FDCPA on the allegedly false representations made by Quantum while attempting to collect from Plaintiffs, in particular, the existence of debt which turned out to be an amount that had been paid and was not owed by Plaintiffs.

The testimony offered during trial suggests that, as part of the assignment of Plaintiffs' account from Doral Bank to Dovenmuehle Mortgage, Inc., and subsequently to Quantum, Quantum was provided with information of Plaintiffs account, including datathat indicated that said account was in default.  This resulted in Quantum's collection attempts against Plaintiffs.  It can be determined from the testimony of Quantum's representative that Quantum was misinformed of the real status of Plaintiffs' account and that Quantum had no knowledge that the information given by Doral Bank during the assignment was false or incorrect.

In determining if Quantum's actions constitute a violation of the FDCPA, the Court should first ascertain its jurisdiction to entertain this controversy.  During trial, Quantum called into question the Court's jurisdiction over the FDCPA claim.  Quantum's argument is based on the Court's determination that there was no violation of the discharge injunction and, consequently, the lack of nexus between the remaining cause of action under FDCPA and the bankruptcy estate.

**1.      Limited jurisdiction of the Court**

The jurisdiction of the bankruptcy court, like that of any other federal court, is limited by statute.  Section 1334(b) of Title 28 provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or 'related to' cases under title 11."  The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or 'related to' a case under title 11 … to the bankruptcy judges for the district."At its

essence, bankruptcy court jurisdiction exists in cases "under" the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* and those cases "arising under," "arising in," and "related to" title 11. 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a). These types of proceedings are further delineated as "core" or "non-core." Because of the constitutional limits imposed upon bankruptcy court jurisdiction, distinguishing between core and non-core proceedings is vital to the exercise of jurisdiction by a bankruptcy court. A bankruptcy court may hear and finally determine all core bankruptcy proceedings; the parties' agreement is not needed. 28 U.S.C. § 157(b). In non-core "related to" proceedings, however, only the district court may enter final orders absent consent of the parties. 28 U.S.C. § 157(c).

Bankruptcy courts may exercise subject matter jurisdiction over core claims that "arise under" or "arise in" a bankruptcy case. A bankruptcy court will also have subject matter jurisdiction over those non-core proceedings that "relate to" a bankruptcy case. In re Middlesex Power Equip. & Marine Inc*.,* 292 F.3d 61, 68 (1st Cir. 2002). A civil proceeding is "related to" a bankruptcy case, for jurisdictional purposes, when the action between the parties affects how much property is available for distribution to creditors of the bankruptcy estate or allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities. Id. at 68. By its very definition, "related-to" jurisdiction only applies in non-core matters as an alternative basis of jurisdiction. It assumes that the matter does not 'arise in' the case at hand and therefore it requires some other nexus *vis-à-vis* the estate involved.

Whether the claims are sufficiently "related to" a bankruptcy case is a question of whether they are "sufficiently connected" to the debtor's reorganization. The Third Circuit has established a much-cited standard for determining whether a proceeding is "related." In Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984), the court described the test as whether "the outcome of that

proceeding could conceivably have any effect on the estate being administered in bankruptcy." The First Circuit has recognized this standard. SeeIn re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991). In addition, numerous First Circuit, district and bankruptcy courts have accepted and applied this test. See, e.g., In re Santa Clara Cnty Child Care Consortium, 223 B.R. 40, 45 (B.A.P. 1st Cir. 1998) (providing a lengthy list of First Circuit district and bankruptcy courts adopting the Pacor test). Simply stated, if the determination of the controversy could have an effect on the bankruptcy estate, the controversy is a "related matter." 28 U.S.C.A. § 157(a).

A FDCPA claim does not "arise under" or "arise in" a Title 11 case, nor is it "related to" a Title 11 case because win, lose or draw, the outcome of Plaintiffs' FDCPA claim cannot conceivably have any effect on the bankruptcy estate because the Plan has been completed and because the discharge has been entered. See McGlynn v. Credit Store, Inc., 234 B.R. 576, 584 (D.R.I.1999) quoting In re Goldstein, 201 B.R. 1, 5 (Bankr.D.Me.1996) and Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (reversed on other grounds). An FDCPA claim regarding post-discharge conduct that does not impact in any way the bankruptcy estate does not fall under Title 11's jurisdictional umbrella because any remedies gained under the FDCPA inure to the plaintiff and not to the bankruptcy estate. Id.

This is the situation in the case at bar. Plaintiffs' cause of action under FDCPA would have no effect whatsoever in the bankruptcy estate and, even if they successfully prosecute said claim, any recovery would be for their personal benefit, not their estate's. No nexus exists between the determination of this controversy and the administration of the estate. Therefore, this Court finds that it has no jurisdictional authority over Plaintiff's FDCPA claim.

**IV. Conclusion**

WHEREFORE, in view of the above, IT IS ORDERED that the complaint be dismissed for

failure to state a claim pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, and because this Court does not have jurisdiction to hear the FDCPA cause of action.

Judgment to be entered separately.

**SO ORDERED.**

**San Juan, Puerto Rico, this 03 day of April, 2012.**

**Brian K. Tester**
**U.S. Bankruptcy Judge**